# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MENZIES MIDDLE
EAST AND AFRICA SA,
127 rue de Mühlenbach
2168 Luxembourg
Luxembourg

     *Petitioner*,

v.

REPUBLIC OF NIGER,
Head of the Ministry of Foreign Affairs
BP : 396, République du Niger
Niamey, 1001 Niger

     *Respondent.*

_____/

Case No. 1:24-cv-00466

## PETITION TO CONFIRM ARBITRAL AWARD

1.     Pursuant to 22 U.S.C. § 1650a and Article 54 of the 1965 Convention on the Settlement of Investment Disputes between States and Nationals of Other States, 17 U.S.T. 1270, 575 U.N.T.S. 159 (the "ICSID Convention"), Petitioner Menzies Middle East and Africa SA (hereinafter, "Petitioner" or "MMEA"), bring this action against the Republic of Niger (hereinafter, "Respondent" or "Niger") to recognize and confirm a final arbitration award issued on July 15, 2013, in ICSID Case No. ARB/11/11, in the matter styled *AHS Niger and Menzies Middle East and Africa SA v. The Republic Of Niger* (the "Award").[1]

_____

[1] A duly certified copy of the Award, including the incorporated and annexed Decision on Jurisdiction, appears as **Exhibit 1** to the accompanying Declaration. Additionally, a duly certified translation of the Award into English appears as **Exhibit 2** to the accompanying Declaration. Finally, a true and correct copy of the ICSID Convention appears as **Exhibit 3** to the Declaration.

1

2. Pursuant to Article 54 of the ICSID Convention and 22 U.S.C. § 1650a, arbitral awards issued under the ICSID Convention "shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of … one of the several States" of the United States. 22 U.S.C. § 1650a(a).

3. Accordingly, Petitioner requests that this Court enter an Order (i) recognizing and confirming the Award, and (ii) issuing a judgment thereupon obligating Niger to pay Petitioner damages and costs in the amount of €4,759,592.15, plus interest in the amount of €345,010.41 from July 15, 2013 to December 31, 2023, the arbitration costs of $361,903.01, plus interest in the amount of $25,390.62 from October 8, 2013 to December 31, 2023, plus accrued interest on the damages and costs, including the arbitration costs, at the Marginal Lending Facility rate as established by the European Central Bank[2] from January 1, 2024 until the date of the judgment, together with post-judgment interest on the preceding sums at the rate applicable under 28 U.S.C. § 1961.

**<u>PARTIES</u>**

4. Petitioner, MMEA, is a company incorporated in Luxembourg and the majority shareholder of AHS Niger. Luxembourg adopted the ICSID Convention on August 29, 1970. *See* Award ¶ 2, Decision on Jurisdiction ¶ 89.

5. Respondent, Niger, is a foreign state within the meaning of the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. §§ 1330 and 1602-1611 and a Contracting State within the meaning of the ICSID Convention. *See* Award ¶ 3, Decision on Jurisdiction ¶ 87.

---

[2] *See* ECB Marginal Lending Facility rate as updated here:
https://www.ecb.europa.eu/stats/policy_and_exchange_rates/key_ecb_interest_rates/html/index.en.html

6. Respondent adopted the ICSID Convention on December 14, 1966. *See* Decision on Jurisdiction ¶ 87.[3]

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction over this action under the FSIA. 28 U.S.C. § 1330 and 28 U.S.C. § 1605.

8. Niger's accession to the ICSID Convention constitutes a waiver of immunity from an action to recognize an award governed by the ICSID Convention. *See* 28 U.S.C. § 1605(a)(1) (subject matter jurisdiction exists if a "foreign state has waived its immunity either explicitly or by implication").

9. Moreover, under 28 U.S.C. § 1605(a)(6), "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . to confirm an award" based on an agreement to arbitrate where "the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards."

10. The ICSID Convention is such a treaty in force in the United States for the recognition and enforcement of arbitral awards. *See Blue Ridge Invs., L.L.C. v. Republic of Arg.*, 735 F.3d 72, 85 (2d Cir. 2013) ("To our knowledge, every court to consider whether awards issued pursuant to the ICSID Convention fall within the arbitral award exception to [foreign sovereign immunity under] the FSIA has concluded that they do.").

11. Because subject-matter jurisdiction exists over this matter against Niger, personal

---

[3] *See also* https://icsid.worldbank.org/about/member-states/database-of-member-states/member-state-details?state=ST101.

jurisdiction also is established. *See* 28 U.S.C. § 1330(b).

12.      Venue is proper in this Court under 28 U.S.C. § 1391(f)(4), which allows civil actions against foreign states or their political subdivisions to be brought "in the United States District Court for the District of Columbia."

## FACTUAL BACKGROUND

### I.       The Investment Agreement.

13.      The Award arises from arbitration of a dispute regarding Niger's withdrawal, by Decree, of an approval granted to AHS Niger to provide ground handling services at Niamey International Airport and the termination of the Investment Agreement between AHS Niger and the Republic of Niger ("Investment Agreement") in December 2010. *See* Award ¶¶ 54-65.

14.      The Investment Agreement and related approval stemmed from a December 2003, international tender for ground handling operations at Niger's airports, including the Niamey International Airport, launched by Niger following the bankruptcy of Air Afrique.  *See* Award ¶¶ 39-40. The Menzies Aviation Group-AHS consortium submitted its technical and financial bids in January 2004.  *See* Award ¶ 41.

15.      Between February 8 and 18, 2004, after the Minister of Transport of Niger declared the Menzies Aviation Group-AHS consortium bid successful, and in fulfillment of the requirements of tender, AHS and the Menzies Aviation Group incorporated AHS Niger, in Niger. Petitioner, MMEA, held the majority (75%) of the shares in AHS Niger. *See* Award ¶¶ 43-44. Thereafter, on February 19, 2004, ministerial decrees No. 015/MT/T/DAC and 016/MT/T/DAC, were issued, the former for ground-handling and self-handling services at Niger airports by a single service provider at the Niamey airport for a period of ten years, and the latter giving a renewable

10-year approval to Aviation Handling Services Niger S.A. (Menzies Aviation Group Partner) to provide ground handling services at Niamey's Diori Hamani international airport, including the handling of passengers, baggage, freight and mail, ramp operations, aircraft cleaning and servicing, line maintenance, flight operations, crew administration, air transport and catering services. *See* Award ¶¶ 45-46.

16. On December 15, 2004, AHS Niger and Niger entered into an Investment Agreement the purpose of which was to document the concession and to "define the conditions under which Aviation Handling Services Niger S.A. will carry out its activities, as well as the commitments of the two contracting parties (sic)…" *See* Award ¶ 47. In accordance with the terms of the specifications, AHS Niger applied for and obtained a ten-year operating license. *See* Award ¶ 48.

**II. Niger's Termination of the Investment Agreement and Expropriation.**

17. In January 2010, ministerial decree 016/MT/T/DAC, upon which the Investment Agreement was based, was amended by two government Decrees, which reduced the approved duration of the concession from ten to five years, repealed earlier provisions, and modified the structure of the ground handling operations by increasing the number of service providers at three. *See* Award ¶ 54.

18. The Ministry of Transportation informed AHS Niger of these changes and called on it to take the necessary measures to renew its license, which the Ministry claimed had expired in February 2009. *See* Award ¶ 55.

19. AHS Niger continued to operate the ground handling service and, in March 2010, obtained renewal of its license issued yearly by the civil aviation authority for the 2010-2011 period. *See* Award ¶ 57.

20.     Thereafter, in December 2010, further Decrees were adopted by Niger purporting to terminate the Investment Agreement, invalidating the license and creating a new Ground Handling Unit at the Niamey airport. *See* Award ¶¶ 59-62.

21.     Additionally, AHS Niger's records, materials and equipment were illegally seized by the new Ground Handling Unit in violation of their ownership rights. *See* Award ¶¶ 63-65.

22.     Between 2010 and 2013 AHS Niger pursued remedies in the state courts of Niger which annulled a number of the offending Decrees. Niger appealed, and its appeal was dismissed, but these rulings failed to cause the reinstatement of the Investment Agreement or a return, even partial, of the expropriated assets. *See* Award ¶¶ 66-70.

**III.     The Arbitration.**

23.     The dispute was submitted to the International Center for the Settlement of Investment Disputes ("ICSID" or the "Centre") on March 11, 2011, on the basis of: (i) the Investment Agreement, (ii) the Investment Code of the Republic of Niger dated December 8, 1989, modified by ordinance in 1997, 1999 and by law in 2001 ("Investment Code"), and (iii) the ICSID Convention.

24.     Article 6 of the Investment Agreement of December 15, 2004, provides:

> Disputes arising from the interpretation or application of this Protocol shall be settled amicably. Failing amicable agreement between the 2 parties, disputes shall be settled by arbitration in accordance with the provisions in force in Niger concerning the settlement of investment disputes. *See* Award ¶ 90.

25.     Article 6 of Niger's 1989 Investment Code, provides:

> The settlement of disputes relating to the validity, interpretation or application of the act of approval and to the determination of a possible indemnity due to the breach or non-observance of the undertakings will be subject to one of the following arbitration procedures to be determined in the act of approval.

1) [ad hoc and *ex aequo bono* arbitration].

2) The possibility for non-nationals to have recourse to the International Center for Settlement of Investment Disputes (ICSID) created by the International Bank for Reconstruction and Development (IBRD) convention of March 18, 1965".

26.     Niger challenged the Tribunal's jurisdiction under the ICSID Convention in its Memorial of April 6, 2011, claiming that (i) Niger had not consented in writing to an ICSID arbitration proceeding; (ii) AHS Niger was a Nigerien company and therefore not an "investor of another Contracting State" under Article 25 of the ICSID Convention; and (iii) MMEA was not a party to the Investment Agreement. *See* Award ¶ 86, Decision on Jurisdiction ¶ 78.

27.     Niger subsequently ceased participating in the proceeding and was deemed to be in default under Article Rule 42 of the Arbitration Rules as of March 13, 2012. *See* Award ¶ 87.

28.     The Tribunal issued a Decision on Jurisdiction on March 13, 2012, upholding jurisdiction over the dispute and claims under the Investment Agreement and the Investment Code. *See* Award ¶ 88, Decision on Jurisdiction ¶ 216.

29.     By letter dated March 13, 2012, the Tribunal noted that Niger did not file a counter-memorial on the merits or a rejection of jurisdiction, and indicated the following:

- That it would grant the Claimant's request dated January 27, 2012, to declare the Respondent in default and issue a ruling pursuant to Article 42 of the Arbitration Rules;
- That if the party in default fails to appear or present its case, it will not be deemed to have acquiesced to the other Party's claims;
- Under the terms of Article 42(3) and (4) of the Arbitration Rules, it would therefore examine whether or not the dispute fell within its jurisdiction and, if so, whether the conclusions were well-founded in fact and in law; and
- That it could, at any time, ask the Claimants to submit observations, new evidence or oral explanations.
- That the Tribunal could at any time ask the Petitioners to file observations, new evidence or to provide oral explanations.  *See* Award ¶ 20.

30.     By letter dated March 14, 2012, counsel for Niger informed the Tribunal of his withdrawal from the case on March 8, 2012. *See* Award ¶ 21.

31.     By letter dated April 18, 2012, the Centre informed the Parties that the Tribunal intended to get back to the Parties regarding the status of its work and with any questions. *See* Award ¶ 22.

32.     By letter dated August 10, 2012, the Tribunal asked the Parties nine questions which they were invited to reply to by September 3, 2012, with the Claimants replying on August 31, 2012. *See* Award ¶ 23.

33.     By letter dated September 25, 2012, and in order to ensure that the Respondent had the complete file in the case, the Centre sent a hard copy of all correspondence exchanged in the file by e-mail since the beginning of 2012 to the Minister of Transport and State Litigations Department, copying in the Niger Embassy in Washington, DC, so that the latter could forward the file to the relevant departments of the State of Niger. *See* Award ¶ 24.

34.     By letter dated January 16, 2013, the Claimants reiterated their request that the Tribunal "should rule only on the heads of claim submitted to it" in their pleadings. *See* Award ¶ 26.  This request was reiterated in a letter dated May 6, 2013. *See* Award ¶ 34.

35.     Subsequently, on July 15, 2013, the Tribunal rendered the Award, declaring that the termination of the Investment Agreement was "unfounded and irregular," that Niger had breached its undertakings under the Investment Agreement, and that Niger had failed to fulfill its obligations under the Investment Agreement and the Investment Code, and that, as a result, it is liable vis-à-vis AHS Niger and MMEA. *See* Award ¶¶ 119, 167.

36.     The Tribunal found no "legal basis for the requisition of AHS Niger's assets,

equipment and personnel" which persisted after the annulment of the termination by the state courts of Niger. *See* Award ¶ 125.

37.     Additionally, the Tribunal found that the requisitioning of AHS Niger's assets, equipment and personnel "had the effect of depriving the Claimants of control, ownership, use and enjoyment of their investment and therefore constitute[d] an expropriation contrary to the undertakings given by Niger in the Investment Agreement and the Investment Code." *See* Award ¶ 126.

38.     The Tribunal ordered the Republic of Niger to pay damages in the amount of €4,641,592.15; ordered the Republic of Niger to pay the costs of the arbitration, including the costs and fees of the members of the Arbitral Tribunal and the ICSID costs; ordered the Republic of Niger to pay €118,000 in defense costs incurred by AHS Niger and MMEA; ordered the Republic of Niger to pay simple interest on the amounts of the awards provided for in paragraphs 167.2, 167.3 and 167.4 above at the annual marginal lending rate set by the European Central Bank (ECB) from the date of notification of the award (and from the notification by ICSID of the amount due with respect to the sums referred to in paragraph 167.3) until such sums are paid in full.  *See* Award ¶ 167.

## LEGAL BASIS FOR RELIEF

39.     The United States is a Contracting Party to the ICSID Convention.[4]

40.     Article 54 of the ICSID Convention requires the U.S. to "recognize an award rendered pursuant to th[e] Convention as binding and enforce the pecuniary obligations imposed

---

[4] *See* ICSID Member Database (Exhibit 3 to the accompanying Declaration).

by that award within its territories as if it were a final judgment of a [U.S.] court." ICSID Convention, art. 54(1).

41. Article 54 further provides that, for Member States (such as the United States) with federal systems, ICSID awards may be enforced "through its federal courts," in which case an ICSID award shall be treated "as if it were a final judgment of the courts of a constituent state." *Id.* Consequently, the implementing legislation for the ICSID Convention states that, "[t]he pecuniary obligations imposed by [an ICSID award] shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a); *see also TECO Guat. Holdings, LLC v. Republic of Guat.*, Civil Action No. 17-102 (RDM), 2018 WL 4705794, at *2 (D.D.C. Sept. 30, 2018).

42. ICSID Convention awards thus "create a right arising under a treaty of the United States." 22 U.S.C. § 1650a(a).

43. ICSID Convention awards against a foreign state may be enforced by plenary actions in U.S. federal district courts if they comply with (i) the FSIA's personal service, jurisdiction and venue requirements, and (ii) the requirements for commencing a civil action under the Federal Rules of Civil Procedure. *See Micula v. Gov't of Rom.*, 104 F. Supp. 3d 42, 49-50 (D.D.C. 2015); *see also Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez.*, 863 F.3d 96, 99-100, 117-20 (2d Cir. 2017).

44. The legal standards governing judicial review of arbitration awards are "not complicated"—they are "limited by design." *Duke Energy Int'l Peru Invs. No. 1 Ltd. v. Republic of Peru*, 904 F. Supp. 2d 131, 133 (D.D.C. 2012) (citation omitted). Those standards are even narrower for awards issued pursuant to the ICSID Convention, which are not open to *any* collateral attack during enforcement proceedings.

10

45. Courts may only "examine the judgment's authenticity and enforce [its] obligations." *TECO*, 2018 WL 4705794, at *2 (citation omitted). They cannot examine its "merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award." *Mobil Cerro Negro*, 863 F.3d at 102; *accord OI European Grp.*, 2019 WL 2185040, at *7. Courts are expected to "treat the award[s] as final," *Mobil Cerro Negro*, 863 F.3d at 102, and award-debtors cannot "make substantive challenges to the award" in enforcement proceedings. *Id.* at 118.

46. Furthermore, the Federal Arbitration Act and its various defenses do not apply to ICSID award enforcement. *See Tidewater Inv. SRL v. Bolivarian Republic of Venez.*, Civil Action No. 17-1457 (TJK), 2018 WL 6605633, at *3-4 (D.D.C. Dec. 17, 2018). Accordingly, Niger cannot collaterally attack the Award during these proceedings.

47. Additionally, Niger may not claim sovereign immunity under the FSIA. The FSIA creates "a comprehensive set of legal standards governing claims of immunity in every civil action against a foreign state." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 488 (1983). The standards include "a set of enumerated exceptions" to state immunity, "including, such as here, when a case is brought to 'confirm an award made pursuant to … an agreement to arbitrate' and the award is 'governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards.'" *Tidewater*, 2018 WL 6605633, at *10 (alteration in original) (quoting 28 U.S.C. § 1605(a)(6)). The Award fits this FSIA exception, and Niger cannot escape confirmation and enforcement here.

48. Niger has also waived its foreign sovereign immunity in this action by acceding to the ICSID Convention. *See* 28 U.S.C. § 1605(a)(1) (a foreign state is not immune from suit in U.S. courts where it has "waived its immunity either explicitly or by implication").

49. As a party to the ICSID Convention, Niger has agreed to abide by and comply with

all awards against it. ICSID Convention, arts. 53(1); 54(1). That very agreement necessarily contemplates "enforcement actions in other [Contracting] States," *Blue Ridge Invs.*, 735 F.3d at 84 (alteration in original) (citation omitted) and dispenses with any claim of sovereign immunity.

## CAUSE OF ACTION AND REQUEST FOR RELIEF

50. Under federal law, the Award is to be given "the same full faith and credit as … a final judgment" issued by a state court. 22 U.S.C. § 1650a(a); *TECO*, 2018 WL 4705794, at *2. Petitioner may therefore enforce the Award's pecuniary obligations against Niger. Accordingly, Petitioner requests that this Court issue an order: (i) recognizing and confirming the Award, and (ii) entering judgment in Petitioner's favor thereupon.

51. Petitioner further requests that the Court enter judgment in the currency specified in the award. *See* ICSID Award ¶ 167. This Court has authority to enter judgment in a foreign currency when requested by the judgment creditor. *See Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 218 (D.C. Cir. 2018) ("Recent cases have endorsed judgment in a foreign currency if the petitioner requests payment in that currency."); *accord* Restatement (Third) of the Foreign Relations Law of the United States § 823 cmt. b (Am. Law Inst. 1987) ("[T]here is no impediment to issuance by a court in the United States of a judgment denominated in a foreign currency.").

52. Once judgment is entered by the court confirming the Award, the proper rate of interest is that prescribed by 28 U.S.C. § 1961. *See OI European Grp.,* 2019 WL 2185040, at *8 (construing ICSID implementing legislation, and the requirement of full faith and credit, as meaning that 28 U.S.C. § 1961 "should apply" as the basis for post-judgment interest, once an ICSID award is confirmed).

WHEREFORE, Petitioner requests that this Court enter an Order:

(i)     Recognizing, confirming and enforcing the Award against Niger in the same manner as a final judgment issued by a court of one of the several states;

(ii)    Entering a judgment thereupon against Niger and in Petitioner's favor obligating Niger to pay the Petitioner damages and costs in the amount of €4,759,592.15 (consisting of Award damages of €4,641,592.15 plus €118,000 in Award defense costs), plus interest in the amount of €345,010.41 from July 15, 2013 to December 31, 2023, the arbitration costs of $361,903.01, plus interest in the amount of $25,390.62 from October 8, 2013 to December 31, 2023, plus accrued interest on the damages and costs, including the arbitration costs, at the Marginal Lending Facility rate as established by the European Central Bank from January 1, 2024 until the date of the judgment;

(iii)   Awarding post-judgment interest at the rate applicable under 28 U.S.C. § 1961; and

(iv)    Granting such other and further relief as the Court deems just and proper.

DATED:  February 22, 2024

Respectfully submitted,

By: /s/ M. Zachary Bluestone
M. Zachary Bluestone (D.C. Bar No. 994010)
BLUESTONE, P.C.
1717 K Street, Suite 900
Washington D.C. 20006
Tel: (202) 655-2250
Fax: (202) 792-6658
mzb@bluestonelaw.com

*Attorneys for Petitioner Menzies Middle East and Africa SA*