UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MENZIES MIDDLE EAST AND AFRICA SA, | ) ) ) ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | Civil Action No. 24-0466 (ABJ) |
| REPUBLIC OF NIGER, | ) ) ) | |
| Respondent. | ) ) | |

**MEMORANDUM OPINION**

Plaintiff Menzies Middle East and Africa SA ("Menzies") has brought this action to confirm an arbitration award issued against the Republic of Niger ("Niger") in the International Center for the Settlement of Investment Disputes under the 1965 Convention on the Settlement of Investment Disputes between States and Nationals of Other States ("ICSID Convention"). 17 U.S.T. 1270; *see* Pet. to Confirm Arbitral Award [Dkt. # 1] ("Pet."). Plaintiff asks the Court to "(i) recogniz[e] and confirm[] the Award, and (ii) issu[e] a judgment . . . obligating Niger to pay [plaintiff] damages and costs," including post-judgment interest. Pet. ¶ 3.

After plaintiff effected service, Niger failed to enter an appearance, and on July 18, 2024, plaintiff filed a request that the Clerk enter a default against Niger under Federal Rule of Civil Procedure 55(a). *See* Req. for Entry of Default [Dkt. # 9]. The Clerk entered the default on July 29, 2024. Default [Dkt. # 10]. Plaintiff then filed a motion pursuant to Rule 55(b) of the Federal Rules of Civil Procedure asking the Court to enter a default judgment against Niger and to confirm the arbitral award. *See* Mot. for Default Judgment and Confirm. of Arbit. Award [Dkt. # 11-1]

("Mot."). For the following reasons, the Court will **GRANT** plaintiff's motion for default judgment.

## BACKGROUND

### I. Factual Background.

Plaintiff Menzies is a company incorporated in Luxembourg and the majority shareholder of Aviation Handling Services Niger ("AHS"), a company incorporated in Niger. Pet. ¶ 4. Defendant is the Republic of Niger ("Niger"), a foreign state within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1603. Pet. ¶ 5. Following the bankruptcy of Air Afrique in 2003, Niger launched an "international tender invitation for ground handling services at Niger's airports." Pet. ¶ 14; Ex. 2 to Decl. of Arnoldo B. Lacayo [Dkt. # 1-3] ("Award") ¶ 40.

In January 2004, Menzies submitted its bid for a ten-year license, which included an investment of 1.7 billion Central African Francs, the purchase of Air Afrique's equipment and the hiring of their former employees, and a payment to Niger of five percent of its gross sales as a concession fee. Award ¶ 41. On February 8, 2024, the Nigerian Minister of Transport declared Menzies the successful bidder. Pet. ¶ 15. Menzies subsequently incorporated AHS under Nigerian law and retained a 75% share of the company. Award ¶ 44. Niger issued two ministerial decrees to set up the single-provider service for ten years at the Niamey Airport, and the parties entered into an "Investment Agreement" in which AHS was to be the sole provider of all ground handling activities. Pet. ¶¶ 15–16. Plaintiff claims that it fulfilled all its contractual obligations in the Investment Agreement. Award ¶ 51.

In January 2010, the Republic of Niger issued two ministerial decrees that "reduced the approved duration of the concession from ten to five years, repealed earlier provisions, and modified the structure of the ground handling operation" and, in a letter, informed plaintiff of the

changes and "asked AHS to take the necessary step to renew its approval, which expired on February 18, 2009." Pet. ¶ 17; Award ¶¶ 54–55. Plaintiff objected to the measure in a letter dated January 24, 2010, "continued to operate the ground handling service, allegedly with the agreement of [Defendant], and on March 8, 2010, obtained a renewal of the annual operating license for the 2010-2011 period." Award ¶¶ 56–57. Defendant issued five ministerial decrees in December 2010, which terminated the Investment Agreement, created its own ground handling unit at Niamey Airport, and requisitioned personnel and equipment from AHS. Pet. ¶¶ 20–21; Award ¶¶ 59–61.

Plaintiff sought legal recourse in Nigerian court, which granted an annulment of the December 2010 decrees and dismissed the Nigerien government's appeal to set aside the ruling; however, the Investment Agreement was never reinstated, and none of the expropriated equipment was returned. Pet. ¶¶ 21–22; Award ¶¶ 66–70.

## II.    The International Center for the Settlement of Investment Disputes.

The International Center for the Settlement of Investment Disputes ("ICSID") was established in 1966 through a multilateral agreement "designed to promote international investment [and] aim[ed] to fulfill the goal of its generating convention by providing reliable dispute resolution processes for members states and nationals of other member states." *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*, 87 F.4th 510, 513 (D.C. Cir. 2023). Parties to any proceeding must "rely on the courts of member states to enforce awards issued by an Arbitral Tribunal" because the ICSID is not empowered to enforce its awards. *Id*. The United States is a contracting party to the ICSID Convention. *See* ICSID, *Member States*, https://icsid.worldbank.org/about/member-states (last accessed June 11, 2025). Congress has

implemented the Convention's requirement to recognize and enforce ICSID awards through federal legislation:

> An award of an arbitral tribunal rendered pursuant to chapter IV of the convention shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States.

22 U.S.C § 1650a(a).

### III. The Underlying Arbitration.

Plaintiff submitted its dispute for ICSID adjudication on March 11, 2011, asserting three grounds for ICSID's jurisdiction: (1) Article 6 of the Investment Agreement;[1] (2) Article 6 of Niger's 1989 Investment Code;[2] and (3) the ICSID Convention. Pet. ¶ 6. In an April 6, 2011 filing, Niger challenged the ICSID's jurisdiction and argued that "(i) Niger had not consented in writing to an ICSID arbitration proceeding; (ii) AHS Niger was a Nigerien company and therefore not an 'investor of another Contracting State' under Article 25 of the [Convention]; and (iii) [Menzies] was not a party to the Investment Agreement." Pet ¶ 26; Ex. 2 to Decl. of Arnoldo B. Lacayo [Dkt. # 1-3] Decision on Jurisdiction ("Jurisdiction Decision") ¶¶ 78–79. After Niger

---

1  Article 6 of the Investment Agreement states: "Failing amicable agreement between the 2 parties, disputes shall be settled by arbitration in accordance with the provisions in force in Niger concerning the settlement of investment disputes." Pet. ¶ 24; Award ¶ 90.

2  Article 6 of Niger's 1989 Investment code states:

> The settlement of disputes relating to . . . breach or non-observance of the undertakings will be subject to one of the following arbitration procedures to be determined in the act of approval:

> (2) The possibility for non-nationals to have recourse to the International Center for the Settlement of Investment Disputes (ICSID) created by the International Bank for Reconstruction and Development (IBRD) convention of March 18, 1965.

Pet. ¶ 25; Award ¶ 91.

nominated an arbitrator to the ICSID's Arbitration Tribunal, it attempted to enter into direct negotiations with AHS to settle the dispute one day before the first tribunal session. Jurisdiction Decision ¶ 13. Menzies rejected Niger's efforts, and Niger subsequently stopped all involvement in the arbitration proceedings and was declared in default under Article 42(4)[3] of the Convention's Rules of Procedure for Arbitration Proceedings. Jurisdiction Decision ¶¶ 11–19.

The ICSID's Arbitral Tribunal concluded that it had jurisdiction over Menzies' claims and explained:

> [Menzies] and [Niger] are parties to and have consented to be bound by the arbitration agreement included in Article 6 of the Investment Agreement, which offers non-nationals the alternative of ICSID arbitration. By virtue of their nationality (effective or recognized by Niger), [plaintiff] [was] legitimately able to make this choice and have thus brought before ICSID arbitration a legal dispute concerning an investment covered by the ICSID Convention, Investment Agreement and Investment Code.

Jurisdiction Decision ¶ 212.

On the merits, the Arbitral Tribunal found that: (1) the termination of the Investment Agreement was "unfounded and irregular," (2) Niger breached its obligations under the Investment Agreement, and (3) there was "no legal basis for the requisition of AHS['s] equipment and personnel." Pet. ¶¶ 35–36; Award ¶¶ 119, 125. The Arbitral Tribunal ordered Niger to pay damages in the amount €4,641,592.15, the cost of the arbitration, defense costs in the amount of

---

3   Article 42(4) states:

> The Tribunal shall examine the jurisdiction of the Centre and its own competence in the dispute and, if it is satisfied, decide whether the submissions made are well-founded in fact and in law. To this end, it may, at any stage of the proceeding, call on the party appearing to file observations, produce evidence or submit oral explanations.

Arbitration Rules, Ex. 3 to Decl. of Arnoldo B. Lacayo [Dkt. # 1-4] at 120.

€118,000, and simple interest at "the annual marginal lending rate as set by the European Central Bank . . . from the date of notification by the Center . . . until such sums are paid in full." Pet. ¶ 38; Award ¶ 167.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 55(a) provides that the Clerk of the Court must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). And under Federal Rule 55(b)(2), the Court may consider entering default judgment when a party applies for that relief. *See* Fed. R. Civ. P. 55(b)(2). "[S]trong policies favor the resolution of genuine disputes on their merits," and, therefore, "[t]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *Jackson v. Beech*, 636 F.2d 831, 832, 836 (D.C. Cir. 1980), quoting *H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970) (internal quotation omitted).

When a default judgment is sought under the FSIA, a claimant must establish their claim or right to relief "by evidence satisfactory to the court." 28 U.S.C. § 1608(e). As the D.C. Circuit has explained, "the statute has always authorized the courts to enter default judgments against defendants who refuse to appear." *Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1048 (D.C. Cir. 2014), citing 28 U.S.C. § 1608(e). Nevertheless, "the entry of a default judgment is not automatic," *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005) (footnote omitted). Before the Court can enter default judgment, it must assure itself that plaintiffs have established that the Court has subject matter jurisdiction to hear the case and that it may exercise personal

jurisdiction over the defendants. *See Jerez v. Republic of Cuba*, 775 F.3d 419, 422 (D.C. Cir. 2014).

## ANALYSIS

### I. The Court's Jurisdiction.

#### A. Subject Matter Jurisdiction

Federal courts are courts of limited subject matter jurisdiction and "lack the power to presume the existence of jurisdiction in order to dispose of a case on any other grounds." *Tuck v. Pan Am. Health Org.*, 668 F.2d 547, 549 (D.C. Cir 1981). The FSIA grants foreign states broad immunity from jurisdiction in both federal and state courts. *See* 28 U.S.C. § 1604. However, district courts

> shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.

*Id.* § 1330(a). Plaintiff contends that two of the FSIA's exceptions apply in this case: the waiver exception, *id.* § 1605(a)(1), and the arbitration exception, *id.* § 1605(a)(6).

The FSIA arbitration exception states:

> In any case . . . in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitration, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards.

28 U.S.C. § 1605(a)(6).

To proceed under this exception, a district court must find the existence of "(1) an arbitration agreement, (2) an arbitration award, and (3) a treaty potentially governing award enforcement." *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1100 (D.C. Cir. 2024). Here, the ICSID found that it possessed jurisdiction over plaintiff's claims premised on Article 6 of the Investment Agreement and Article 6 of Niger's 1989 Investment Code, Jurisdiction Decision ¶ 212, and an award on the merits was promulgated. *See* Pet. ¶ 38. In addition, the ICSID Convention is "a treaty in force in the United States which calls for the recognition and enforcement of such awards." *ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venezuela*, 628 F. Supp. 3d 1, 7 (D.D.C. 2022), citing *Blue Ridge Inv., Inc. v. Republic of Argentina*, 735 F.3d 72, 85 (2d. Cir 2013). The Court therefore finds that Niger is not immune from suit because this matter falls under the FSIA's "arbitral award" exception in section 1605(a)(6).[4]

---

[4] Plaintiff also argues that "Niger's accession to the ICSID Convention constitutes a waiver of immunity" under section 1605(a)(1) which provides that a foreign state shall not have immunity in any case "in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver." 28 U.S.C. § 1605 (a)(1). Although other judges in this district have found jurisdiction on this basis, the D.C. Circuit has stated that "[t]he waiver issue remains 'unsettled' in our Circuit," and it has twice declined to rule if the waiver exception applies to ISCID awards. *NextEra*, 112 F.4th at 1100; *von Pezold v. Republic of Zimbabwe*, No. 23-7109, 2024 WL 4763943, *4 (D.C. Cir. Nov. 13, 2024); *but see ConocoPhillips*, 628 F. Supp. at 7 ("Venezuela implicitly waived its sovereign immunity with respect to suits to recognize and enforce ICSID awards by becoming a Contracting State to the ICSID Convention."). Because the Court finds that the arbitral award exception under the FSIA is satisfied, it need not determine whether the FSIA waiver exception applies.

B.        **Personal Jurisdiction.**

"Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have [subject matter jurisdiction] where service has been made under [28 U.S.C. § 1608]." 28 U.S.C. § 1330(b). In *Barot v. Embassy of the Republic of Zambia*, the D.C. Circuit recited the manner in which service can be accomplished under Section 1608(a):

> The [FSIA] provides four methods of service in descending order of preference. First, "by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision." [28 U.S.C.] § 1608(a)(1). Second, "by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents." *Id.* § 1608(a)(2). Third, "by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned[.]" *Id.* § 1608(a)(3). And fourth, if none of the first three methods works, a plaintiff can serve the appropriate documents through the Department of State. *Id.* § 1608(a)(4).

785 F.3d 26, 27 (D.C. Cir. 2015). "When the defendant has not appeared, the plaintiff need only make a *prima facie* showing of having made appropriate service." *ConocoPhillips*, 628 F. Supp. at 8, citing *Mwani*, 417 F.3d at 7.

The Court agrees with plaintiff that service could not be made under sections 1608(a)(1) or (2) because there is no indication in the record that the parties had "any special arrangement," and Niger is not a contracting party to any "applicable international convention on service of judicial documents." *See* 28 U.S.C. §§ 1608(a)(1)-(2); Mem. of P. & A. in Supp.

of Pet.'s Mot. for Default Judgment and Confirm. of Arbit. Award [Dkt. # 11-1] ("Mem.") at 8.[5]

On April 1, 2024, the Clerk of the Court transmitted the summons, complaint, notice, and a translation of each in French to the Head of the Ministry of Foreign Affairs of Niger, in Niamey, where it was delivered and signed for on April 30, 2024. Mem. at 8; *see also* Cert. of Clerk [Dkt. # 7]; Attach. A to Aff. of Service [Dkt. # 8-1]. The Court therefore concludes that service on Niger was accomplished pursuant to section 1608(a)(3), and it finds that plaintiff has personal jurisdiction over Niger under section 1330(b).

## II.   Niger failed to Respond to Proper Service.

Once served, a foreign state has sixty days to enter a responsive pleading, 28 U.S.C. § 1608(d), or "it runs the risk of incurring a default judgment . . ., 'which must be sent to the foreign state or political subdivision in the [same] manner prescribed for service.'" *Republic of Sudan v. Harrison*, 587 U.S. 1, 6 (2019), quoting 28 U.S.C. § 1608(d).

Niger was afforded sixty days after the date of service to respond to plaintiff. *See* 28 U.S.C. § 1608(d). Because defendant was served on April 30, 2024, it was required to answer no later than June 29, 2024. To date, Niger has not responded to plaintiff's petition, entered an appearance, or requested an extension to do so. Therefore, Niger has properly been in default since the Clerk's entry of default on July, 29 2024. *See* Default.

---

5   *See also* U.S. Dep't of State, Bureau of Consular Affairs, Niger Judicial Assistance Information, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Niger.html (last updated March 30, 2018).

### III.     Plaintiff Has Sufficiently Established Its Claim for Relief.

In order to obtain a default judgment, a plaintiff must "establish[] [its] claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). Here, federal law provides that an arbitration award at the ICSID "shall be given the same full faith and credit as if the award were a final judgment from a court of general jurisdiction of one of the several states." 22 U.S.C. § 1650a(a), *see also* ICSID Convention Art. 54(1).

The phrase "full faith and credit" in section 1650a(a) is borrowed from 28 U.S.C. § 1738, which "governs the enforcement of state court judgments in federal court [and] does not direct federal courts to review the merits of the state court judgements." *Valores Mundiales*, 87 F.4th at 518–19. And a state court judgment is entitled to full faith and credit "when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Durfee v. Duke*, 375 U.S. 106, 111 (1963). This Court has no apparent reason to second-guess the ICSID Arbitration Tribunal's judgments as to both its own jurisdiction and the Award. Although Niger originally challenged the ISCID's jurisdiction, Pet. ¶ 26, the Arbitration Tribunal offered a thorough and well-reasoned decision that it had the authority to resolve the dispute and issue an award, Jurisdiction Decision ¶ 212, and to hold otherwise would cut against both congressional intent and the ISCID Convention's framework. Moreover, the Tribunal detailed the circumstances surrounding Niger's contract with plaintiff, and the losses plaintiff suffered. Pet. ¶¶ 35–36; Award ¶¶ 119, 125. Therefore, the Court finds that plaintiff has established its entitlement to relief under 22 U.S.C. § 1650a(a).

### IV.     Award Amount & Currency Conversion.

Plaintiff requests that the Court convert the Euro Zone-Euro (Euros) portion of the award, which consists of damages, defense costs, and interest, to U.S. Dollars (USD). Mot. at 12. The

Court agrees that converting an arbitral award in a foreign currency to USD is "consistent with settled law, that a 'judgment in a foreign currency should be issued only when requested by the judgment creditor.'" *Continental Transfert Tech. Ltd. v. Fed. Gov't of Nigeria*, 603 Fed. Appx. 1, 4 (D.C. Cir 2015), quoting Restatement (Third) of Foreign Rel. L. § 823 cmt. b. (Am. L. Inst. 1987). Therefore, the Court will grant plaintiff's request to convert the Euro portion of the award to USD at the rate of conversion in the place on the date the award was rendered.

The United States Department of Treasury reports its official exchange rates on a quarterly basis. For the quarter ending on September 30, 2013, the exchange rate between Euros to USD was 0.74. U.S. Dep't of Treasury, *Treasury Reporting Rates of Exchange*, https://fiscaldata.treasury.gov/datasets/treasury-reporting-rates-exchange/treasury-reporting-rates-of-exchange (last accessed June 30, 2025). The operative part of the Award states that the damages and arbitral defense costs would accrue simple interest from the date of the notification of the award – July 15, 2013 – at the "marginal lending rate set by the European Central Bank." Award ¶ 167. The marginal lending rate on July 15, 2013 was one percent. European Central Bank, *Key ECB Interest Rates*, https://www.ecb.europa.eu/stats/policy_and_exchange_rates/key_ecb_interest_rates/html/index.en.html (last accessed June 16, 2025). The arbitration cost was determined in USD and parties were notified to its amount on October 8, 2013, which is the date that that portion of the award began to accrue simple interest at the same rate. Award ¶ 167.

The results of the calculation are as follows:

|  | Amount awarded (€)[6] | Amount Awarded (in USD)[7] | Daily Interest Rate[8] | Accrual Date[9] | Days of Interest [10] | Total with Interest (USD)[11] |
|---|---|---|---|---|---|---|
| Arbitration Damages | 4,641,592.15 | 6,272,421.82 | 0.0000274 | 7/15/2013 | 4355 | 7,020,891.096 |
| Arbitration Costs | N/A | 361,903.01 | 0.0000274 | 10/8/2013 | 4270 | 404,244.938 |
| Defense Costs | 118,000 | 159,459.46 | 0.0000274 | 7/15/2013 | 4355 | 178,487.278 |
|  |  |  |  |  | Total Award: | 7,603,623.313 |

Lastly, Menzies is entitled to post-judgment interest at the statutory rate set out in 28 U.S.C. § 1961.

## CONCLUSION

For the reasons stated, the Court finds that it has subject matter and personal jurisdiction over the Republic of Niger and that plaintiff has established its right to a default judgment through evidence satisfactory to the Court. Plaintiff's motion for a default judgment, [Dkt. # 11], will therefore be **GRANTED**, and the Court will award judgment to plaintiff in the amount of $7,603,623.31.

---

6   See Award ¶ 167.

7   The Court multiplied the amount awarded in Euros by 1.35135135, which is the relevant inverse exchange rate.

8   The Court divided the interest rate of 1% by 365 days per year.

9   See Award ¶ 167.

10   The Court calculated the days since the ICSID award notification and the arbitration cost notification to the date of this memorandum opinion, June 16, 2025.

11   The Court multiplied the amount awarded by the daily interest rate by the days of interest, and it added that product to the amount awarded.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: July 3, 2025